Thank you, Your Honor. My name is Eric Kingsley, and I represent the appellant and plaintiffs in this matter. We believe this is a straightforward case, and there's really one decision that the court has to make, and whether or not this matter should be certified as a class and remanded back to the district court, or whether or not we should be remanded back to the court to conduct additional discovery. What facts do you hope to discover under pre-certification discovery? Well, we haven't done any discovery, so obviously we want to sort of seek out what's out there, but I think in large part Isn't that a fishing expedition if you just want to see what's out there? Well, no. I mean, well, let me step back a second. So what we do know is we know that all of the class members were paid a salary. We know all of the class members were not paid overtime. And we know that there's records that substantiate that all of the class members worked overtime. And so the only question in this case is whether or not the outside sales exemption applies. And we would submit, based on the record presented here, that the only evidence the defendants cited, and they weren't at our handicapped position because they obviously have all the documentation in their control. The only evidence they submitted was in the declaration of Richard Genera, which is on page 56 of the record. And he stated on the outside sales exemption that the mobile pros were expected to cultivate new business opportunities. So what evidence would you seek in discovery that would help in resolving the issue of whether or what the status of the mobile pros is? We would look at various policies and documents, training materials that might have been provided to the mobile pros to see what their actual job duties are. And we would communicate with the mobile pros to determine if selling occurred. Our client told us that he didn't sell at all. And so under California law, defendant would need to prove that 51% of the time was spent selling. And in our client's view, 0% of the day was spent selling. What was the job of a mobile pro? Sure. So mobile pros would basically come in in the morning. There would be a drop location where they would pick up windshields to put on to various vehicles. So depending on the make or the model of the vehicle, there would be different sizes and so forth. And so they would place those windshields for the day onto their truck, and then they would drive throughout the community to people's homes and offices and conduct those installations. And in fact, the defendant ended up, I mean, interestingly enough, in the answer to the complaint, the defendant asserted 25 affirmative defenses, and not one of those affirmative defenses related to the outside sales exemption. What I'm trying to get to is, so someone breaks their windshield. They call SafeLight, and SafeLight sends these mobile pros out to repair the windshield, right, replace or repair the windshield. So what are they supposed to be selling? I have no idea. So, Your Honor, I'm. What could they be selling? Well, I hope you break your window again so I can come back and put another one in. Perhaps. I don't know. So that's exactly right. And so the defendant. They could sell window tint. They could sell upgraded windshield products. So you just never know. I mean, we don't know. Everybody can sell something. That's the whole point. So, yeah. I mean, the question was, what could they possibly sell? Right. Your Honor, I guess. You could theorize a number of things they could sell. Sure. And I guess it should have been an incumbent upon defendant. I mean, they put in this unsupported conclusionary statement, and that's the only evidence that's in the record. And so from our perspective, we feel that we've made a prima facie showing that they were paid on a salary, they worked overtime, and they weren't paid overtime. That's all we would need to prove to prove our case to be entitled to overtime under California law. And so our case is made. So for the purpose of class certification, there's common issues that clearly predominate. So then the only issue becomes whether or not the outside sales exemption applies. And we view that as a straw man argument. They said, oh, outside sales applies. Does that mean because you assert an affirmative defense with no evidentiary basis that class certification should be denied? And if you look at the facts in this case in terms of the procedural history where we stipulated with the defense to extend the 90-day rule to conduct discovery, that was denied by the judge without any rationale. He didn't give a reason for that. That was – who was the judge? Judge Klausner. Klausner. That was surprising to me because usually when the parties stipulate for an extension of time, the judge approves it. Right. And then we made a motion to the court where we put up more evidence to the court, and that was also denied without a rationale. And then finally, we filed our motion for class certification because we didn't want to be untimely and we wanted to comply with all of the proper rules of the district court. And the court then made a finding that we satisfied A-1, 2, 3, 4 of Rule 23, which we thought was pretty impressive considering we weren't able to conduct any discovery. And he denied it based on 23B-3 wasn't satisfied. And the rationale was, is we weren't able to show that anybody else had the same experience that Mr. Perez did. But we had no way – I mean, part of the reason why we had no way, defending in their opposition here, attacks us by saying we should have gone out and done our own discovery. But by the nature of the job, because they're mobile pros, they're out in the field and so they're not interacting with other individuals. Our client was out in Camarillo, and so he was sort of all by himself up there. And so he had very little interaction with other employees who he could – able to communicate with and get additional information for class certification. And so we were kind of left with the need to communicate with these folks. How will – what discovery would you seek that would – that you think could produce evidence that the common issues predominated? We think that we could take a couple of depositions, perhaps, of some persons most knowledgeable about the training and how the sales activity would have occurred in the field and how much time that would take. If it's really just, as Your Honor indicated, tinting or some small amount of selling in conjunction with the installation, then no reasonable fact finder could find that that's 51 percent of their day. I mean, as I indicated – I actually haven't got to this, but as the defendant indicated, is they actually went through an analysis of their day. And they went through and they said that there were an average of 3.6 jobs performed per day and the average job takes 60 to 90 minutes. And so when you add those averages up, it's about four and a half hours of their day. And that doesn't include the travel time between each of the various locations. It doesn't count the time when they go to the drop location, they pick up and put the material on their truck. And it doesn't count the time at the end of the day when they turn in the paperwork. So the travel time in L.A., going to four or five stops, could take an hour or more, certainly. And so we're already talking about five, six, maybe even more hours of their day. And so unless they're working 12, 13 hours in a day, they're never going to get to the 51 percent test. And so – Are you saying that those are unpaid hours, the travel hours, or no? Well, so under California law, if you work more than eight hours in a day or 40 hours in a week, you're entitled to overtime. But that's not what I'm asking. I'm asking you as part of – I mean, how are they paid? Are they paid for the time – do they clock in when they pick up the materials and then the day is done when the last installation? Or do they keep track of their time for each job and exclude travel time? Do you know how the jobs work? My understanding is they would – the time would start, certainly the way California law would treat it, and assuming they did it accurately, is the time would start when they show up at the drop location and would end when they finished their day and they left the drop location at the end of the day. So they wouldn't obviously be paid for the commute from their house to the first location and obviously the commute home. But they would get all the time in between, including the travel time. So was the – even though Safe Flight agreed to the continuum stipulated, they didn't stipulate to discovery being conducted? They did not. And in fact, we asked them the day – on December 6th, the day that the stipulation was denied by the court, we asked if they would have the early meeting of counsel so that we could start discovery. And as you know, we can't conduct discovery until that's occurred. And since the judge didn't set the initial scheduling conference until 10 months after removal, we had no way of starting that discovery clock and commencing the discovery. So basically, you know, we – they ran the clock out on us. And then because the judge – I mean, alternatively, I think what the judge could have done too, sort of another error here, is after the certification motion was filed and he found that we met the four standards under 23A, he should have said, okay, we'll go back and go do discovery and see if you can prove up the 23B factor. But he didn't do that. But I guess what I would argue here is that the defendant had an opportunity in their opposition brief to substantiate this outside sales exemption, and they failed to do so. And so it would seem to us, based on this record, it was an abuse of discretion for Judge Klausner to not certify the class because we've clearly, with the evidence submitted by the defense in conjunction with our own evidence, have satisfied all the requirements, including 23B3, because clearly common issues predominate, and there's no evidence to substantiate this outside sales exemption. Did you have a hearing on the class certification motion, or did he do that in chambers? Well, actually, on both motions that were before him, so the motion to continue the 90-day rules, he took it off, and then he issued his ruling on the 90th day when our certification motion was due. And then as to the certification motion, he also took it off under submission. Took it off, took it under submission. And then he issued his ruling. So we've actually, this is the first judicial hearing that we've had on the class certification issue since the case was removed back in 2010. So you weren't able to make some of these arguments to him about being in a catch-22 between the rules and his rulings? Well, we did make them in writing, and we put some of that material, obviously, in the stipulation and in the motion, and then there was no analysis by him or any comment on it either. Right. There's nothing in his order about that. Another reason the court might need to take another look is because Dukes came out versus Wal-Mart came out after the court made its ruling in this case, and it may affect some of the rulings that the court made. I understand defendants brought that up, obviously, in the appeal here. I don't think Dukes has any application to this case, and I'll tell you why. It's because Dukes is a gender discrimination case, as we all know, which has mens rea and all kinds of issues relating. Well, it was basically discretionary. The managers were given discretionary. They had discretion over the hiring. Sure. That was basically it so that you couldn't prove it up on a class basis. And so in this case, the plaintiff's time to face your case is actually undisputed by the parties because we all agree they were paid a salary. We all agree they weren't paid overtime, and the records that defendants indicate exist that show the time in and time out show all the time worked, and so it would just be a math problem to figure out what the overtime would be owed. So the only question, frankly, at trial, will be whether the outside sales exemption applies. And since we contend, based on the record, that it's a straw man argument, if it's excluded, it's their burden, it's their burden of proof, then there's nothing left to decide. So we don't see how Dukes could even apply. Well, Dukes did change the commonality analysis, and so... Well, I understand that, but based on this record, I don't see what would be left to determine. Well, it never hurts to let the district court judge take the first shot at it. I may not agree with you. May or may not. If there's not further questions, I'll reserve the balance of my time. Good morning, Your Honors. May it please the Court. I'm Dan Clark on behalf of Safe Life. Are you from Ohio? Yes, Your Honors. You're escaping the ice storms, aren't you? I'm afraid I'm going to be flying right back into the ice storm in the morning, so I may enjoy this weather as long as I can. Enjoy today. Yeah, this is cold for us, but... Everyone in Ohio is hoping we'll all be coming back here in a few months for another football game, so that's the... I'll tell them it's beautiful. But I think it's appropriate first to address the procedural history of the motion for class certification and class definition. When this case was filed, it was filed as an individual case brought by Mr. Perez. It really has been in search of a class action theory to accompany these individual claims. The original class as pled in the complaint was defined as all associates of Safe Flight in the State of California for the four years preceding the complaint. There were a multitude of claims, including overtime claims, meal and rest period claims, and a number of other claims under the California Labor Code. The complaint went so far as to argue that all of the members of the class, all of Safe Flight's associates in California, were not exempt, meaning every employee that Safe Flight has classified as exempt from overtime in the state has been misclassified. This class included 1,200 individuals holding 38 different positions. Wait, I thought it was 75. This is the complaint as pled in the complaint. Right, but it's been whittled down now. This is the complaint that the motion for class certification, this is the definition that was used in the motion for class certification, was all associates. So now it's all just, it's a subsection, it's just the mobile pro? I mean, how many mobile pro people are there working for Safe Flight in California? At the time that this record was created, 45. 45, so we're talking about 45 people. The motion for class certification did not address mobile pros, identify them as a class. It did not argue that mobile pros had been misclassified under the outside sales exemption. The motion for certification primarily argued about meal and rest period claims. It asserted two overtime theories. The first one was that Safe Flight associates had worked through lunch periods, and as a result there were hours of overtime that had not been accounted for. But those issues are no longer outstanding, are they? Haven't those issues been given, acceded by the plaintiffs? They have. And it's important that that was the motion that Safe Flight was opposing. But the district court did address the exemption, the outside sales exemption in its 23B3 analysis. It did. So why? It did that. I don't understand the point of what you're arguing. It responds to the appellant's suggestion that, regarding the contents of the record in our opposition, in arguing that we didn't establish the outside sales exemption. That evidence wasn't put in the record because it wasn't. But the issue is joined now. Are you trying to argue that that issue is not properly before us? The issue of the certification of the mobile pro class is appropriately before the court. Okay. So can we talk about that? Well, absolutely. But the reason that the record is what it is on that question, in terms of what do mobile pros do all day, the reason that wasn't in the record is because it wasn't a part of the issue the opposition was responding to. So what was your opposition to limited discovery or discovery so as to move the case along? Why would you object, your client object to discovery? We filed a notice of non-opposition to the motion for extension of time. But opposing counsel said there was a request to have the initial meeting of counsel so as to get the discovery ball rolling, and that was not agreed to. That's correct. When this complaint came in with this class, very broad class, a multitude of claims, the plaintiff's motion for extension described some of the conversations between counsel at the time. We were having discussions about trying to get our hands around what is this class. Obviously, the defendant has no notice this case is coming, and the 26F conference requires us to engage in a conversation about the scope of discovery, timing of the case schedule, all of the things that the district court would expect the parties to agree on or at least discuss in advance of the initial scheduling conference. We were in no position at this very early stage to engage in that. Within the entire time before it was timed out, you weren't in the position to talk about discovery any time while this case was pending? Is that your position? We did talk about discovery and the scope of the discovery. The discovery that was served, there was premature discovery requests were served, and it was, I don't believe it's been made a part of the record in this court, but it was discovery addressing all Safe Flight Associates statewide, these 38 positions. It wasn't. It was so overbroad. Okay, so you could have had a meet and confer over that to narrow it, or you could have taken it before a magistrate judge. One of the things that I find problematic with Judge Klozner's order here is that one of the reasons that he gave for finding that the class failed to satisfy Rule 23b-3 was the lack of evidence produced by the plaintiff. But that is real. How can he have relied on that when he refused to allow discovery even when there was an extension of time? He goes on and on about yet plaintiff offers no evidence that the other class members performed the same work and were responsible for the same duties. All that information was in your hands, your client's hands.  Well, I would suggest there were probably two avenues that the plaintiff or Mr. Perez and or his counsel could have used to get this information to support their motion and to comply with the local rule, giving them 90 days. First option would be to conduct pre-complaint investigation. Mr. Perez worked for Safe Flight for 15 years, from 94 to 2003 as a technician, and from 2003 as a mobile pro. He certainly had colleagues, friends. They had his weekly training meetings. He's working remotely, but certainly he has a way to identify other potential class members and to build some support. Will you mention weekly meetings? Were there weekly meetings of the employees? There were weekly safety meetings and trainings. Is there something to that effect in their record? I don't know that that is in the record. He wouldn't associate with those people because the claim made was that they worked remotely. They didn't interact with each other. Well, the record is really addressing both technicians and mobile pros because that was the class pled and the class that the plaintiff's motion was moved upon. But now we're down to mobile pros only. But the mobile pros work in areas where there aren't a retail store. Yes, they're assigned geographical territories, right? And their duties are to sell, not to drive and buy somebody. But what do they sell? They sell the company's services. They are not out finding somebody with a cracked windshield and say, hey, can I fix it? They would develop relationships with used car dealership, rental car agencies. Is this in the record? It's not. Okay. I don't know. No, the appellant is describing this as these jobs that they're just doing. But you submitted a declaration by Mr. Gennaro that was pretty conclusory that said that they sell. You didn't say what they sold. You didn't say anything like you're saying right now. And the reason that Mr. Gennaro did not go into any more detail in his declaration is because that declaration was submitted in opposition to a motion which did not address mobile pros at all. Okay. What is the business of Safe Flight? Go back to basic. What is the business of Safe Flight? They provide windshield replacement and repair services. So if someone has a broken one, I break my windshield. I call Safe Flight. You could call Safe Flight. Or another competitor. Or you could call your insurance agency. Okay. And then they would contact Safe Flight and say I have a broken windshield. And then what happens next? You send out your mobile pro person to replace it? A technician is likely the person that is sent out to do that work. A technician is an hourly employee whose full-time job is to do windshield replacements. That's different than a mobile pro? It is. I thought the mobile pro, I thought the record said the mobile pro was the one who went out and replaced. The mobile pro will do replacements, but the mobile pro's primary job was to sell Safe Flight services by building relationships with referral sources such as the fleets. That isn't what Perez says his job was. That's true. Was he a mobile pro? He said he didn't do it. He was a technician and then he became a mobile pro. Okay. I am now thoroughly confused between what I read in the record and what is being argued here. So you heard opposing counsel's articulation of what kind of discovery would be helpful in terms of moving the case along. Would Safe Flight be amenable to perhaps doing some type of limited discovery to resolve the issue of whether or not there were sales involved? Well, I think I can answer that in two ways in getting back to, I guess, the question I failed to complete my answer to on what was Mr. Perez to have done. How was he supposed to have gotten this information? His other option would have been to file his complaint as an individual lawsuit and conduct that limited type of discovery, take a deposition of the supervisor, obtain the policies. What's the job description? And on that basis, determine are there class issues here? Is Mr. Perez's testimony consistent with Safe Flight's expectations for the job? But the district court already determined that the requirements of Rule 23A were met, so it's pretty close to being a class action. So why should he be forced to pursue the claim individually? Because of the nature of the claim that he's pursuing on a class basis, this misclassification argument under the outside sales exemption. Under California law, the court is required to conduct a week-by-week analysis and determine whether the majority of the employee's time was spent performing exempt duties. So for each of the 45 potential class members, there would have to be an inquiry on a week-by-week basis of not just were they doing selling and then how much of their time were they engaged in selling. Perhaps not. If the discovery reveals a common theme, that's the purpose of doing the discovery, to determine if common questions predominate. If there is a common policy in the company that's applied to all 45, then you don't have to do the individual deposition. Well, Mr. Perez's complaint alleged that there were such consistent policies. Who has that information? Don't you have it? Yes. All right. I mean, in terms of the documents? Yes. Yes. That you described. But you're suggesting that he should file a single lawsuit and do discovery to get it? Why can't he get it in this lawsuit? Well, because when he filed his complaint, he was representing that there was a factual basis for the allegations in the complaint, and not just his individual allegations, but the complaint contained very broad class allegations. He's alleging not just my experience at Safe Flight was that I didn't do any selling. He alleged, and this was a consistent policy that Safe Flight applied across the state. The reality is that Mr. Perez doesn't have any evidence of that. He shouldn't have alleged that in his complaint. This is a chicken and egg question. He doesn't have evidence because he hasn't been able to do discovery, and he's not allowed to do discovery because he doesn't have evidence. If he doesn't have the evidence, then that would seem to be a fishing expedition. But, you know, if he had filed his individual suit in state court, as you suggest, then you wouldn't have been able to remove to federal court under CAFA. I'm sorry. I didn't hear the first part. If he had filed, as you suggested, an individual action in state court, you wouldn't have been able to remove under CAFA. I believe likely if he has filed the same claims that he did file, just as an individual basis, I would. So you would prefer? Not under CAFA, but the amount of controversy requirement would be met for removal, regardless if it was an individual case. It would have been met? Yes. I can't say what the complaint would look like as an individual case, but the same theory. So you would have removed it and would be in the exact same spot, no hearing below, no discovery below, and no ability to obtain evidence. Well, and the district court's local rule is very clear. It's a local rule that's been upheld multiple times by this court as an appropriate rule. It's a rule consistent with Rule 23. It does not give parties a substantial amount of time for discovery. The problem isn't the local rule. The problem is the dismissal of the case without allowing discovery and no explanation. That's the problem with this case. Well, the authorities of this court, I mean, going back to Appellant Cites Donninger, the proposition that there's an entitlement to class discovery on a pre-classification basis, and even those authorities require the plaintiff to make a prima facie showing that they can establish the requirements of Rule 23. Here, plaintiff made no effort in his motion for extension of time to lay out that case. Well, the court said that the requirements of 23A were met, right? On a much reduced different class after the decision on the motion for extension of time. But that's the mobile pros, though, for the mobile pros. That wasn't before the court. That evidence wasn't before the court at the time it was deciding the motion for extension of time. So to say it was an abuse of discretion to deny the request for an extension, we have to look at the record. But it wasn't only one time. That's the problem. There were repeated requests to get discovery until the case was finally dismissed. There was a proposed stipulation and a motion, and the motion did not, there was no argument by Mr. Perez that I can make out a prima facie case so I'm entitled to it. Well, there was always a mention of discovery. Each time there was a motion made, there was a mention of discovery in it. You know, there was a motion for discovery. The argument was not I've made out a prima facie case, and so therefore under Ninth Circuit authorities I'm entitled to it. I'm not sure you have to say exactly that to say that discovery would be helpful in terms, we need discovery in order to satisfy the requirements that you've done. Appellant's own brief concedes that they had a burden to prove a prima facie case. They argued that they did that. But they're relying on an after-the-fact decision that they didn't present to the district court until after it had denied that motion. I'm over my time if there are no further questions. Thank you, counsel. Safe flight back. Just a couple quick points here. While you're thinking of those points, what's your response to opposing counsel's argument that before you're entitled to discovery, it's your obligation to make a prima facie case that you've met all the requirements of 23A and B? Right. Well, so if we would have made a prima facie case of all the requirements, 23A and 23B, then the class would have been certified. So I'm not entirely clear how that could be because then we would have met all the requirements. So we laid out the case. The case that he cites, Donninger, does say actually, even though it denied discovery in that case, it says that the best practice is to provide discovery in all cases and further says that where there's another case of this court, CAM versus California City Development Company, which basically lays out a three-factor test, which is need, time required, and the probability of discovery resolving factual disputes. And so I think the third requirement, I mean, the time was 90 days. It's not very much time. And the probability that we would be able to make this determination, and that's what I wanted to get at, is so I, for the first time, learned of what their sales argument is. And so he just said, and it seems to me it's a judicial admission, that the sales activity is going to various dealerships and building relations with referral sources to get them to refer people to purchase Safelite's services. That is not a sale under the California law because the individual that is actually purchasing the product is the customer who's replacing the windshield. So the fact that they were engaged in trying to get various folks to refer people to contact Safelite when their glass got a dent in it or it smashed or whatever it is, that's not a sale. So if that's their case, then the entire outside sales exemption is completely eviscerated. And based on the record as it's presented, as I indicated, the three requirements, paid a salary, not paid overtime, and worked overtime, it would be an abuse of discretion for this case not to be certified. What's your response to opposing counsel's representation that there are two classes of people who are involved, the technicians and the mobile pros? Well, like Your Honor knows, we didn't know a lot about this case other than our clients' information when we started this thing. This was obviously an evolving process even to this day. And once we got their opposition, we understood exactly what the contours of this case are. In our reply, we quickly said, okay, we're going to abandon all of these other issues. We're going to just focus on the mobile pros and proceed with them. And that's obviously the ruling of the court, and that's where we are here. It's actually my understanding they had some settlements regarding those other individuals just recently in the Northern District of California. So I think my time is about to expire, so unless there's a last question, I'll submit. Any last questions? No. All right. Perez v. Safe Flight Group will be submitted. We have previously submitted Gonzales v. Southern Wine and Spirits of America. And this session of the Court is adjourned for today. All rise. This Court for this session stands adjourned.
judges: Nelson, Wardlaw, Rawlinson